IN THE UNITED STATES DISTRICT COURT FOR

THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| Superspeed Golf, LLC<br><br>Plaintiff,<br><br>v.<br><br>The Stack System GP, Inc. and The Stack System, LP,<br><br>Defendants, | Case No. |

**COMPLAINT FOR FALSE ADVERTISING**
**& JURY DEMAND**

## Table of Contents

Nature of Action.................................................................................................2

Jurisdiction and Venue ....................................................................................2

Parties...................................................................................................................4

Statement of Facts.............................................................................................5

   I.   The large and growing market for golf equipment and training...................5

   II.   Superspeed introduces OverSpeed Training to golfers.........................6

   III.   Stack System enters the market offering competing products and training ..................................................................................................................8

   IV.   Stack System's wrongful conduct ......................................................11

      Stack System's produces inflated metrics later used to, mislead and deceive consumers.................................................................................11

      Stack System's misleading and false use of trainee data in marketing.......15

      There are no "Real Results," "Real Gains," or "Proven in the Field" results ..... 17

      Stack System's false advertising harms Superspeed.............................24

Count I False Advertising Under 15 U.S.C. § 1125(a)(1)(B).......................25

Count II................................................................................................................ 27

Violation of the Illinois Uniform Deceptive Trade Practices Act ...................27

Request for Relief.............................................................................................28

Demand for Jury Trial .....................................................................................31

Plaintiff Superspeed Golf, LLC (**"Superspeed"**), through its attorneys at PHILLIPS & BATHKE, P.C., for its causes of action against Defendants The Stack System GP, Inc. and The Stack System, LP (collectively **"Stack System"**), alleges as follows:

## Nature of Action

1. This Complaint seeks injunctive relief and damages for false advertising by Stack System. Defendant has made false, misleading, deceptive, and unfair statements about results from using its Stack System products and protocols in its advertising and promotion in violation of Section 43(a)(1)(B) of the Lanham Act (15 U.S.C. § 1125(a)(1)(B)) and state law. Reasonable consumers have been and will be misled and deceived by these acts of unfair competition. Superspeed, competitors of Stack System, have lost customers and revenue due to the unlawful actions of Stack System.

## Jurisdiction and Venue

2. This Court has subject-matter jurisdiction over Superspeed's federal claim under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because it involves substantial claims arising under the federal Lanham Act.

3. This Court has supplemental jurisdiction over Superspeed's state-law claims under 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over Stack System. Stack System's acts of false advertising were committed within the geographical bounds of this District and within this Court's jurisdiction as set forth further below.

5. Stack System has disseminated its false advertisements to consumers residing in Illinois.

6. Stack System engages in extensive interactive marketing on the internet, including responding to consumers, reposting content about Stack System products by consumers, and commenting on consumer's posts about the gains on its products.

7. Its website, www.thestacksystem.com, advertises its products and services in this District.

8. Stack System also sends marketing materials to consumers in this State and District who have provided it with their physical and email address, whether or not the consumer buys products. Thus, Stack System is knowingly directing false or misleading advertising into this District.

9.  Stack System has engaged in substantial activity within Illinois and this judicial District and has had substantial contacts there, having purposefully availed itself of the privilege of conducting activities in the forum.

10. Stack System has caused injury to Superspeed within Illinois and within this judicial District.

11. Stack System also has affiliations with others, including at least one golf professional in this District—in Westmont, Illinois. That golf professional advertises Stack System products and when you click "The Stack System" on his website you are offered a discount on checkout containing this golf professional's name.

12. Venue is proper in this District under 28 U.S.C. § 1391 as Stack System transacts business in this District and a substantial part of the events giving rise to Superspeed's claims occurred and are continuing to occur in this District.

**Parties**

13. Superspeed is a limited liability company duly organized and existing under the laws of the State of Illinois.

14. Upon information and belief, The Stack System GP, Inc. is a corporation organized and existing under the laws of the State of Arizona, having an office and place of business at 23213 North 39th Terrace, Phoenix, Arizona 85050.

15. Upon information and belief, The Stack System, LP is a limited partnership formed in 2020 in Arizona.

16. Upon information and belief, the Stack System, LP's general partner is The Stack System GP, Inc.

**Statement of Facts**

I. <u>The large and growing market for golf equipment and training</u>

17. Golf is one of the world's most popular sports and its growth shows no signs of slowing. In 2023, the United States Golf Association reported over three million players with official handicaps, a 16% increase in just three years.[1]

18. Golfers are known for being passionate about the game. That passion has spurred tremendous consumer demand for equipment and training.

---

[1] Rudy, M., *Why there's reason to belief golfs growth in popularity will endure*, Golf Digest (May 18, 2023), available at https://www.golfdigest.com/story/why-theres-good-reason-to-believe-golfs-surge-in-popularity-will-endure.

According to Grand View Research, golf equipment market size was valued at $7,480,000,000 in 2022 with expectations to grow at a compound annual rate of 5% until 2030.[2]

19. Superspeed and Stack System compete in the market for golf training equipment and programs. They each sell golf training equipment and provide programs for increasing swing speeds.

II.    Superspeed introduces OverSpeed Training to golfers

20. Superspeed is an industry leader in creating golf swing speed products and training programs. It began operations in 2014.

21. Superspeed was founded by Michael Napoleon, a PGA of America Professional and longtime operator of a golf performance academy in Chicago, and Kyle Shay, a lifetime golfer, competitive through college.

22. Superspeed was fundamental in making OverSpeed Training central to the golf training and instruction market in the mid-2010's and remains an industry leader.

---

[2] *Report Summary: Golf equipment market size, share & trends analysis report by product (golf club, golf balls, golf gear, golf footwear & apparel), by distribution channel (sporting goods retailer, on-course shops, online), by region, and segment forecasts, 2023-2030,* Grand View Research, available at https://www.grandviewresearch.com/industry-analysis/golf-equipment-market#.

23. OverSpeed Training, put relatively simply, is a neuromuscular stimulation that causes the player's body to react faster when swinging a golf club. This works by using lighter weight training clubs relative to the weight of the player's driver allowing their body to move significantly faster. The player's brain "remembers" these faster reaction speeds and begins to "expect" these faster speeds to happen when swinging a driver instead of the training clubs.

24. Through proper equipment and training regimens, a person using OverSpeed Training should see increases in club swing speeds.

25. When properly applied in golf, increased club swing speeds should increase distance traveled when striking a ball.

26. Superspeed introduced OverSpeed Training equipment and training protocols to golfers at large in 2014–2015.

27. SuperSpeed's products have been or are currently used by multitudes of golf tour professionals and major tournament champions, collegiate programs, and top training facilities around the world.

28. Along with its products and training system, Superspeed offers a certification program for coaches.

29. Since creating and growing the market for OverSpeed Training, Superspeed has seen numerous competitors, both fair and unfair, enter and exit the marketplace.

III.   <u>Stack System enters the market offering competing products and training</u>

30. According to the Arizona Secretary of State, the entities comprising Stack System were formed about five years after Superspeed brought OverSpeed Training and Superspeed's products and training protocols to the attention of golfers at large.

31. Stack System's marketing materials reflect Sasho MacKenzie, proclaimed "savant of speed" and "[g]olf's foremost biomechanist," is one of its founders.[3]

32. Its marketing materials name another founder, Marty Jertson. They hold him out as an engineer at PING, PGA Major participant, and member of winning PGA Cup teams.

33. Like Superspeed, Stack System decided to offer a weighted club of a similar design for use in its system.

---

[3] *The Founders*, The Stack System, available at https://www.thestacksystem.com/pages/our-story.

34. Like Superspeed, the Stack System decided to sell radar equipment for the use of tracking user's progress and in-session feedback.

35. Like Superspeed, the Stack System decided to offer a coaching program—but without a certification program for coaches.

36. Stack System offers a "trade-in" program in which a purchaser of its weighted club set, "The Stack," could then trade in a set of Superspeed's weighted training devices for a $100 refund to the consumer's method of payment.

37. Stack System heavily advertises these products and services   .

38. Its website, www.thestacksystem.com, advertises its products and services in this District.

39. Its website allows the purchase of products by those residing in this District, with its "Shopping Cart" and "Check Out" functions allowing those residing in this District to pay for and have products shipped into this District.

40. Stack System also sends marketing materials by email directly to consumers in this State and District who interact with the shopping cart function on its website. After that interaction, after a consumer provides an

email address and physical address, it may receive email marketing materials regardless of whether they buy products.

41. Stack System has sent marketing materials to consumers it knows to be in this District.

42. Stack System's website's "Shipping, Returns, Warranty" page specifically provides for shipping in the United States, without restriction to a given location.

43. Stack System is also active on social media.

44. Stack System has a X.com (formerly known as Twitter) account, @thestacksystem.

45. It engages in extensive marketing on this account. In large part, its marketing consists of interaction with consumers. It routinely replies to comments by consumers, reposts consumers content, and otherwise engages interactively with consumers.

46. Stack System also has an Instagram account, @thestacksystem, where it undertakes similar marketing efforts.

47. A large portion of Stack System's marketing on these platforms consists of posting purported swing speed gain metrics.

IV.    <u>Stack System's wrongful conduct</u>

48. In swing speed training, consumers focus mainly on speed gain and distance gain metrics. These serve as the primary consumer consideration when choosing a swing speed training system.

*Stack System's produces inflated metrics later used to, mislead and deceive consumers*

49. Stack System's marketing materials inflate apparent swing speed and distance gains through selective presentment of data without qualification that purported gains are not the result, in whole or part, of its training protocol and products.

50. In the Stack System training protocol, initial baseline speed values are measured with "full intent" swings.

51.  Stack System's baseline session includes "full intent" swings with a driver not hitting a ball as well as various Stack weights—including what is referred to in this Complaint as the **"195-gram weighted training device."**[4]

52. Stack System's training protocol states that a "full intent" swing is one that would be the "fastest you would feel comfortable on a course."

---

[4] The 195-gram weighted training device is Stack System's core training device with a 195-gram weight stack attached, for a total of 401-grams.

53. This speed is used to calculate a baseline for the trainee.

54. This baseline value is used to calculate a lifetime and a session-to-session gain metric for trainees using the Stack System training protocol.

55. After the baseline session, trainees are often, possibly always, placed in their first program called "Foundation." At the ends of the Foundation training sessions, trainees are prompted to swing the 195-gram weighted training device.

56. During the first three or so Foundation training sessions, a trainee swings a heavy weighted training device, such as one at 240-grams[5], for one set of "full intent" swings.

57. Then, the consumer drops to the 195-gram weighted training device for a final set of drills for "full intent" swings.

58. It is well known in the field of OverSpeed Training that swinging a heavier weight object before a lighter weight object will cause the trainee to swing the later, lighter weight object more slowly than the full capacity of the trainee.

---

[5] The device with this 240-gram weighted stack has a total weight of 446 grams.

59. Thus, at this point a trainee's swing speed values will be lower than they would be absent swinging a heavier training device before.

60. Then at some point after the first week or so of "full intent" swings, often the 4th session, the training sessions introduce the concept of a "max intent" swing.

61. At this point, the trainee is instructed to swing the 195-gram weighted training device using "max intent," defined by Stack System to be the "fastest swing possible to set a new personal best with that weight."

62. This "max intent" effort is supposed to be so great that Stack System even provides an instructional video about "max intent" swings stating that it is acceptable to "lose balance" and a person would "never use this much speed on the course."

63. Sasho MacKenzie, Stack System's founder, admits that a "full intent" swing is four to ten percent slower than a "max intent."



64. At this stage trainees are mostly, possibly always, instructed to use the Stack System's protocol and devices to measure their 195-gram weighted club training device swing speed after a lighter weight condition.

65. Accordingly, data collected at this stage is artificially high when compared to baseline data. For example:



66. According to Stack System's founder, the data will be inflated by 4 to 10 percent before even considering the change from swinging a heavier training device to a lighter training device before measurement when using the 195-gram weighted training device.

*Stack System's misleading and false use of*
*trainee data in marketing*

67. When a Stack System protocol trainee is viewing their results in the application, they see a disclaimer reading, "This is your baseline eSpeed (and distance potential) for your current program compared to the fastest eSpeed at any point so far in the current program."

68. Also when viewing their results, a trainee sees a share function.

69. By providing this share function and interacting and reposting its trainees results, Stack System encourages those who have already purchased its products and training protocol to publish their results to social media.

70. Stack System's trainees are further encouraged to share their progress upon launching the application, stating users can share their progress.

71. Yet when the trainee uses the in-app share function to share his or her metrics on social media the disclaimer above is not shared.

72. Stack System then uses trainee posts from the share function or trainee screenshots posted to social media as advertising material by reposting the same. Examples are below.



73. Stack System also provides trainees with a referral link, further incentivizing them, through money, to share posts like the two above.

74. Stack System publishes trainees' purported swing speed gains without qualification as to training protocol changes between the baseline and the values or other explanation in marketing materials and advertising.

75. Stack System is comparing apples-and-oranges in its advertising to those who have not bought its products. It does not provide potential purchasers with the qualification made to those who have purchased its products.

*There are no "Real Results," "Real Gains," or*
*"Proven in the Field" results*

76. Stack System appears to use a formula or algorithm to convert swing

speed values into expected driving distance.

77. Thus, when Stack System's swing speeds are artificially inflated, without

qualification, the expected distance gains are also inflated.

78. Stack System advertises inflated distance gains, without qualification or

explanation. An example follows.



79. Consumers would be expected to see "gains" just by switching from "full intent" to "max intent." According to Stack System's founder, a 4-10% increase would be expected from this change alone.

80. Those familiar with OverSpeed Training understand that trainees would be expected to see "gains" just by switching from a heavier training device before measurement to a lighter training device before measurement.

81. Potential purchasers, unless well versed in biomechanics or golf coaching, are unlikely to be aware of this fact.

82. As one of its founders is repeatedly held out as a "savant of speed" and "[g]olf's foremost biomechanist," Stack System should understand that the "gains" it reports in advertising materials are artificially high.

83. The claims of swing speed gains above are misleading, deceptive, and unfair and reasonable consumers would find them to be misleading, deceptive, and unfair.

84. When consumers question why they are not making gains, Stack System requests that they contact them outside the view of other consumers. An example follows.



85. Nor does Stack System respond to comments requesting "real measurements."



86. Concerning "real measurements," Stack System's marketing materials focus heavily on the phrases "REAL STACKERS. REAL RESULTS" and "REAL STACKERS. REAL GAINS." Examples follow:



87. Even so, the "results" and "gains" of 24 yards average distance gains are not real.

88. Stack System's claimed "real result" and "real gain" of 24 yards average distance gains claims are not measured after a drive at a golf course or driving range—a real result or real gain.

89. Stack System also advertises that 24 yards average distance gains are "PROVEN IN THE FIELD."



90. "Proven in the field" is a claim that the data set used, here from trainees of the Stack System training protocol, have seen 24-yard average distance gain "in the field," i.e., a driving range or golf course.

91. At a minimum, "real results," "real gains," and "proven in the field" results would require striking a ball—a fundamental portion of the game of golf.

92. Stack System's claimed "real result" and "real gain" of 24 yards average distance gains claims are not measured after a drive at a golf course or driving range. They are not even measured while striking a ball.

93. When responding to a trainee's question, to Stack System on X.com, about whether swing speeds for drivers should be measured while striking a ball, Stack System's founder instructed that it was not to be measured while striking a ball.



94. In this same thread, Stack System's founder asked another golf expert to delete his comment that hitting balls is the best form of measurement.

95. Thus, Stack System is asking its trainees, who seemingly provide its data set for its advertising, to avoid putting "real results" and "in the field" results into the data set and asking third-parties to remove any suggestions that could lead to reporting of actual, real results.

96. Finally, Stack System publishes conflicting data concerning "gains," indicating at least one advertisement is literally false. An example follows.



97. Stack System is advertising 50-yard distance gains. The trainee, Ash Notaney, reports apparent "real results," "real gains," or "in the field" results of only 20 yards.

98. In this example, the "real results" provided by Stack System appear inflated by 250%.

99. Thus, when Stack System makes claims of "real results" of 24 yards average distance gains, the advertising is literally false.

100. Thus, when Stack System makes claims of "real gains" of 24 yards average distance gains, the advertising is literally false.

101. Thus, when Stack System makes claims of "proven in the field" results of 24 yards average distance gains, the advertising is literally false.

*Stack System's false advertising harms Superspeed*

102. Superspeed's sales are lower due to Stack Systems' false advertising.

103. On an ongoing basis, Stack System is using false, misleading, and deceptive advertising willfully and intentionally to siphon off Superspeed's market share in the lucrative market for golf swing speed training protocols. Stack System's misconduct has cost and is costing Superspeed substantial sums in lost revenue.

**Count I**
**False Advertising Under 15 U.S.C. § 1125(a)(1)(B)**

104.   Superspeed incorporates by reference each allegation in the preceding

paragraphs.

105.   As its first ground for relief, Superspeed alleges that Stack System has

violated Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

106.   Stack System's advertising in connection with incentivizing and

reposting trainee swing speed gains and expected driving distance gains

from its app, without qualification or explanation, as set forth above,

consists of misleading, deceptive, and unfair quantitative measures of the

results from its use of its products and protocols.

107.   Stack System's advertising in connection with "real results," "real gains,"

and "proven in the field" results of 24-yard average distance gains are

literally false as to the measures of the results of use of its products and

protocols.

108.   This false, misleading, deceptive, and unfair advertising misrepresents

the characteristics and qualities of Stack System's products in violation of

15 U.S.C. § 1125(a)(1)(B).

109.   Stack System's false, misleading, and deceptive advertising and promotion occurred in interstate commerce.

110. Stack System's advertising that its products deliver swing speed gains, expected distance gains, "real results," "real gains," and "proven in the field" concerning distance gains were and are material to consumers' purchasing decisions in deciding whether to buy its products as opposed to its competitor's products.

111. In addition, these false, misleading, deceptive, and unfair descriptions of fact continue to deceive or tend to deceive a substantial number of reasonable golf training aid consumers and remain material to consumers' purchasing decisions.

112. On information and belief, Stack Systems' acts of false advertising described herein were intended to cause and did in fact cause deception of the public, misleading prospective purchasers as to the true characteristics and qualities of Stack System's products.

113. Upon information and belief, Stack Systems' acts of false advertising were willful.

114. As a proximate result of Stack System's acts described above, Superspeed has suffered and will continue to suffer irreparable harm in the form of damage and injury to its business in the form of lost revenues, profits, and market share.

115. Superspeed will continue to sustain serious loss of revenues, profits, and market share unless Stack System is preliminarily and permanently restrained and enjoined by the Court from further false advertising.

**Count II**
**<u>Violation of the Illinois Uniform Deceptive Trade Practices Act</u>**

116. Superspeed incorporate here by reference each allegation in the preceding paragraphs.

117. As its second ground for relief, Superspeed allege that Stack System has violated the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

118. Stack System's actions, in the course of its business, are representing its goods and services to be of a particular standard, quality, or grade when they are of another.

119. Stack System's actions, in the course of its business, are representing its goods or services have benefits that they do not have.

120.    Upon information and belief, Stack System willfully engaged in and continues to willfully engage in the above-described deceptive trade practices.

121. As a proximate result of Stack System's acts violating the Illinois Uniform Deceptive Trade Practices Act described above, Superspeed has suffered and will continue to suffer irreparable harm in the form of damage and injury to its business in the form of lost revenues, profits, and market share.

122.    Superspeed will continue to sustain serious loss of revenues, profits, and market share unless Stack System is preliminarily and permanently restrained and enjoined by the Court from further false advertising.

### Request for Relief

WHEREFORE, Superspeed respectfully request that this Court:

A. Grant a preliminary injunction and thereafter a permanent injunction restraining and enjoining Stack System and its officers, directors, agents, servants, employees, successors, assigns, and attorneys, as well as all of those in active concert or participation with any of them, from:

1. Using any false, misleading, or deceptive representation or description that can or is likely to misrepresent to the trade or public,

or individual members thereof, the characteristics or qualities of any product or service advertised, promoted, offered or sold by Stack System or the expected results of use of those products or services, including, but not limited to, descriptions on or in point of purchase advertising, television commercials, radio commercials, print advertising, social media, and websites;

2. In particular, making claims that Stack System's products provide swing speed gains and expected distance gains that without qualification as to the protocol and conditions of speed measurement or claiming they are real results, real gains, or proven in the field; and

5. Engaging in any other activity constituting unfair competition with Superspeed;

B. Find that Stack System has disseminated false and/or misleading representations of fact in commercial advertising or promotion in violation of 15 U.S.C. § 1125(a)(1)(B) and find that Stack System has competed unfairly in violation of federal and Illinois law.

C. Order deletion of all false advertising distributed and recall of all packaging containing false advertising, and require Stack System to issue

notices (written or otherwise) to that effect to all current distributors and retailers of its products and all distributors with whom Stack System has done business in the past eighteen months.

D. Order Stack System to file with the Court and serve on Superspeed within thirty days after issuance of an injunction a report in writing and under oath setting forth in detail the manner and form in which Stack System has complied with the injunction, under 15 U.S.C. § 1116.

E. Order Stack System to disseminate corrective advertising at Stack System's expense that informs consumers, the trade, and the public at large of Stack System's unlawful conduct as complained of herein and of the judgment requiring Stack System to cease such unlawful conduct; order Stack System to pay Superspeed' costs in producing and disseminating such corrective advertising; or both.

F. Issue an Order awarding Superspeed monetary relief from Stack System in an amount to be fixed by the Court in its discretion as just, including:

    1. All profits received by Stack System from sales and revenues of any kind made because of its unlawful actions, this amount to be trebled.

2. All damages sustained by Superspeed as a result of Stack System's actions, this amount to be trebled.

3. The costs of the action.

4. All reasonable attorneys' fees under 15 U.S.C. § 1117 because of the exceptional nature of this case resulting from Stack System's deliberate and willful false advertising or, in the alternative, under 815 ILCS 510/3.

G. Grant Superspeed all other relief to which Superspeed are entitled and such other or additional relief as is just and proper.

## Demand for Jury Trial

Superspeed demands a trial by jury on all counts so triable.

Respectfully submitted,
Superspeed Golf, LLC, by

s/ Jonathan Phillips
Jonathan Phillips (IL6302752)
PHILLIPS & BATHKE, P.C.
4541 North Prospect Road
Suite 300A
Peoria Heights, Illinois 61616
+1 309 643 6518
jlap@pb-iplaw.com

John T.D. Bathke

PHILLIPS & BATHKE, P.C.

53 West Jackson Boulevard

Suite 805

Chicago, Illinois 60604

+1 312 260 9160

jtdb@pb-iplaw.com